FILED
2015 MAY 22 PM 4: 13
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANNIE THOMPSON, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) CASE NO._____ ) ) ) COLLECTIVE ACTION COMPLAINT |
| vs. | ) FOR VIOLATIONS OF THE FAIR ) LABOR STANDARDS ACT OF 1938 |
| FIRST ACCEPTANCE CORPORATION, FIRST ACCEPTANCE INSURANCE COMPANY, INC., FIRST ACCEPTANCE INSURANCE COMPANY OF TENNESSEE, INC., AND ACCEPTANCE INSURANCE AGENCY OF TENNESSEE, INC., | ) ) ) ) ) ) ) |
| Defendants. | ) |

## COLLECTIVE ACTION COMPLAINT

Comes Plaintiff Annie Thompson, individually and on behalf of all others similarly situated, by and through counsel, and for her cause of action states the following:

### NATURE OF SUIT

1.  The Fair Labor Standards Act (hereinafter "FLSA") was passed by Congress in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and a one-half times the regular rate at which he is employed." *Walling v. Helmerich &*

1

*Payne,* 323 U.S. 37, 40 (1944)(discussing the requirements of 29 U.S.C. §207(a)).

2. This is an action under the FLSA, 29 U.S.C. §§201 *et seq..* Defendants violated the FLSA by failing to pay certain employees at time and one-half their regular rates of pay for all hours worked within a workweek in excess of forty hours. Plaintiff seeks payment for unpaid overtime work and liquidated damages that she and others similarly situated were deprived of due to Defendants' violations of the FLSA.

3. This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331 (federal question).

4. Proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. §1391(b). Defendant First Acceptance Corporation has its principal place of business in Nashville, Davidson County, Tennessee. Further, Defendant First Acceptance Company of Tennessee, Inc. is a Tennessee corporation with its principal place of business in Nashville, Davidson County, Tennessee. Finally, many of the acts complained of herein occurred in this venue.

## PARTIES

5. Defendant First Acceptance Corporation ("FAC") is a retailer, servicer and underwriter of non-standard automobile insurance, currently operating in 12 states, including Tennessee, and is licensed as an insurer in 13 additional states.

6. FAC owns and operates three insurance company subsidiaries, which are organized and domiciled under the insurance statutes of Texas, Georgia and Tennessee: First Acceptance Insurance Company, Inc. ("FAIC"); Acceptance Insurance Agency of Tennessee, Inc. ("AIA-TN"); and First Acceptance Insurance Company of Tennessee, Inc. ("FAIC-TN").

2

Case 3:15-cv-00586   Document 1   Filed 05/22/15   Page 2 of 10 PageID #: 2

7. As of February 26, 2013, FAC leased and operated 368 retail locations, including locations in Tennessee. As of December 31, 2012, FAC had approximately 1,100 employees.

8. Plaintiff and all others similarly situated (hereinafter the "Class" or "Class Members") are current or former employees of Defendants FAC, FAIC-TN, AIA-TN, and/or FAIC, who were given the title of "insurance agent" by Defendants, and who have worked for Defendants at some point in time from October 13, 2011, to the present.

9. Plaintiff and the Class are/were employees within the meaning of the FLSA, 29 U.S.C. §203(e)(1). The written consent of Plaintiff is attached as Exhibit 1.

10. Defendants are employers within the meaning of 29 U.S.C. §203(d) of the FLSA.

11. Defendants constitute an enterprise or enterprises engaged in commerce within the meaning of 29 U.S.C. §203(e)(1) of the FLSA.

12. Defendants made in excess of $500,000.00 in annual dollar volume of business in each of the past three years.

13. Plaintiff and the Class are engaged in interstate commerce, the production of goods for interstate commerce, or an activity closely related and directly essential to the production of such goods in each workweek of their employment with Defendants.

## INDIVIDUAL FACTUAL ALLEGATIONS

14. Plaintiff and the Class worked as "insurance agents" (hereinafter "Agents") for Defendants during part or all of the time period from October 13, 2011, to the present.

15. Attached as Collective Exhibit 2 are the Plaintiff Consent Forms signed by Casey Jones, Colleen Matincheck, Samantha Ferguson, Robert Martin, Tammy Bradford, Pamela Miller and Eric Spry. Upon information and belief, Casey Jones, Colleen Matincheck, Samantha Ferguson,

3

Robert Martin, Tammy Bradford, Pamela Miller and Eric Spry worked as Agents for Defendants during part of the period from October 13, 2011, to the present.

16.  Plaintiff and Class Members normally and routinely worked in excess of 40 hours in any given workweek.

17.  Plaintiff and Class Members worked in excess of 80 hours in each two-week pay period.

18.  On and after October 13, 2011 (and for some time prior to October 13, 2011), Defendants did not pay Plaintiff or Class Members 1.5 times their normal hourly rate for any hours worked over 40 in any workweek.

19.  On and after October 13, 2011 (and for some time prior to October 13, 2011), Defendants did not pay Plaintiff or Class Members for any hours worked over 40 whatsoever in any workweek.

20.  Throughout their employment with Defendants, Plaintiff and Class Members did not have the authority to hire, fire, or reprimand other employees.

21.  On and after October 13, 2011 (and for some time prior to October 13, 2011), Defendants hired other individuals to serve as Customer Service Representatives ("CSRs") at each of its office locations.

22.  On and after October 13, 2011 (and for some time prior to October 13, 2011), the job duties of CSRs and Agents were the same.

23.  On and after October 13, 2011 (and for some time prior to October 13, 2011), CSRs were not typically allowed to work more than 40 hours in any given week.

24. If a CSR worked more than 40 hours in a given workweek, Defendants would pay them 1.5 times their normal hourly rate for each hour worked in that workweek over 40 hours.

25. On and after October 13, 2011 (and for some time prior to October 13, 2011), the duties of the Agents (and CSRs) included gathering information from applicants required for quoting and writing policies.

26. Questions in the applications included the applicant's birthdate, social security number, address, and other personal information.

27. The application questions were standardized and the same for each applicant.

28. The information obtained from applicants would be entered into Defendants' computer system, which would then produce a quote along with premium prices for that individual.

29. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents could not determine which customers qualified for any type of insurance coverage.

30. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents could not alter the premium which customers were quoted or charged.

31. This premium was solely generated by the Defendants' software.

32. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents were required to "up sell" customers with add-on products, but had no discretion as to whom they offered these add-on products.

33. Defendants required Agents to offer these add-on products to every customer, regardless of whether or not they were appropriate candidates for such products.

34. On and after October 13, 2011 (and for some time prior to October 13, 2011), the job duties of Agents were very specific, and provided no room for interpretation or variation through the exercise of discretion or independent judgment.

35. On and after October 13, 2011 (and for some time prior to October 13, 2011), a large portion of the workday of the Agents was spent calling delinquent customers in an attempt to collect overdue premiums.

36. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents were permitted to explain to customers how to make a claim, but had no authority or discretion to decide whether claims were paid or denied.

37. On and after October 13, 2011 (and for some time prior to October 13, 2011) Agents did not supervise any other employees.

38. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents did not have the authority to delegate any of their duties to other employees.

39. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents did not have the authority to handle or resolve employee grievances or complaints.

40. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents did not have the authority to interpret, establish, or enforce company policies, but were simply required to follow Defendants' policies as presented to them.

41. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents reported to work every day at the same location.

42. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents did not make more than $100,000.00 annually.

43. On and after October 13, 2011 (and for some time prior to October 13, 2011), Defendants considered Agents to be "salaried" employees and as such "exempt" from the overtime provisions of the FLSA.

44. On and after October 13, 2011 (and for some time prior to October 13, 2011), Agents were actually "non-exempt" employees under the FLSA who were entitled to overtime pay based on their actual job duties.

## COLLECTIVE ACTION ALLEGATIONS

45. Plaintiff has actual knowledge that Class Members have also been denied overtime pay for hours worked over forty hours in a week since October 13, 2011.

46. On and after October 13, 2011, and through the present, Defendants have suffered, permitted, and/or required Agents they employed to work in excess of forty hours per week for less than the federally proscribed overtime rate based on their regular rate of pay.

47. On and after October 13, 2011, and through the present, Class Members performed the same or similar work as did Plaintiff in the performance of their duties and provision of services on behalf of the Defendants.

48. On and after October 13, 2011, and through the present, Plaintiff and Class Members regularly work or worked in excess of forty hours during a workweek for less than the federally proscribed overtime rate based on their regular rate of pay.

49. As such, Class Members are similar to Plaintiff in terms of job duties, conditions of employment, and pay structure.

50. Class Members are similar to Plaintiff in the denial of overtime pay when permitted or required to work over forty hours in a workweek.

51. Defendants' failure to pay overtime compensation at the rates required by the FLSA results from a single decision, policy, practice or plan, and does not depend on the personal circumstances of Plaintiff or individual Class Members.

52. Plaintiff's experiences while employed as an Agent for Defendants are typical of the experiences of Class Members while they were employed as Agents for Defendants.

53. The specific job titles or precise job titles of each Class Member do not prevent collective action treatment because their actual job duties and conditions of employment were similar.

54. Plaintiff and all Class Members are entitled to overtime compensation under the FLSA for hours worked in excess of forty during a workweek since October 13, 2011, while working for Defendants.

55. The Class of similarly-situated Class Members is properly defined as follows:

**All persons employed by or who served as Agents for First Acceptance Corporation, First Acceptance Insurance Company of Tennessee, Inc., First Acceptance Insurance Company and/or Acceptance Insurance Agency of Tennessee, Inc., at any time from October 13, 2011, to the present, and continuing until such time as Defendants' violations of the FLSA cease.**

## CAUSE OF ACTION

56. Plaintiff re-alleges and incorporates by reference the facts set forth above.

57. Defendants violated 29 U.S.C. §207(a) by failing to pay Plaintiff and Class Members they employed time and one-half their regular hourly rates for all hours worked in excess of 40 hours during a workweek since October 13, 2011, and continue to fail to do so.

58. Plaintiff and Class Members have been damaged by Defendants' violations of the FLSA.

59. Defendants' violations of the FLSA were repeated, willful and intentional.

60. In the alternative, Defendants' violations were "reckless" in that Defendants uniformly classified Plaintiff and Class Members as "exempt" despite failing to perform any due diligence or to take the necessary steps to ensure that such classification was correct.

61. Pursuant to 29 U.S.C. §207(a) and §216(b), Defendants are liable to Plaintiff and Class Members they employed for the full amount of all their unpaid overtime compensation, an additional equal amount as liquidated damages, plus the attorney's fees and costs incurred in preparing and pursuing this action.

## **PRAYER**

WHEREFORE, Plaintiff respectfully requests judgment be entered in Plaintiff's and Class Members' favor, awarding:

A. overtime compensation for all unpaid hours worked in excess of forty hours in a workweek at the rate of one and one half times their regular rates;

B. an equal amount as liquidated damages as allowed under the FLSA;

C. reasonable attorney's fees, costs, and expenses of this action as provided by the FLSA;

D. pre-judgment and post judgment interest at the highest rates allowed by law; and

E. such other relief as to which Plaintiff and Class Members may be entitled.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

/s/ MARTIN D. HOLMES
MARTIN D. HOLMES, BPR #012122
PETER F. KLETT, BPR #012688
424 Church Street, Suite 1401
Nashville, TN 37219
Telephone (615) 244-6538
Facsimile (615) 256-8386


THE HIGGINS FIRM, PLLC.

/s/ JONATHAN A. STREET
JAMES S. HIGGINS, BPR #016149
JONATHAN A. STREET, BPR #021712
RYAN SIMMONS, BRP #031456
116 Third Ave South
Nashville, TN 37201
Telephone (615) 353-0930
Facsimile (615) 353-0963

*Attorneys for Plaintiff and Putative Class Members*

NASHVILLE 57480-1 534159v1